COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
C.A. No.

MICHAEL FINAMORE and FINECAMP K O A, INC.,
d/b/a WEBSTER FAMILY CAMPGROUND
                           Plaintiffs,

v.

JASON PIADER, DANIEL COURNOYER, MARK
MASON, CHRISTOPHER DAGGETT, and DANIEL
FALES, as they are THE MEMBERS OF THE TOWN
OF WEBSTER, MASSACHUSETTS ZONING BOARD
OF APPEALS,

AND

RANDALL BECKER, JENNIFER SULLIVAN,
DOUGLAS WILLARDSON, THEODORE
TETREAULT and MICHAEL SHAW, INDIVIDUALLY
and in their capacities as officials of the TOWN OF
WEBSTER, MASSACHUSETTS,
                           Defendants.

## COMPLAINT AND JURY DEMAND

1

## INTRODUCTION

This is an action by Michael Finamore and his business, the Webster Family Campground in Webster, Massachusetts against named officials of the Town of Webster, in their individual and official capacities, for illegally and tortiously conspiring to damage Finamore in his campground business and ultimately to force the campground out of business. The actions of the defendant officials were taken against Finamore with actual malice, personal ill will, improper motives and using improper means. As a result of the tortious action of the defendant officials, Finamore has suffered significant damages and is faced with the threat of the loss of his business. Finamore and his business corporation, Finecamp K O A, Inc., seek money damages, equitable relief, legal fees and costs of suit. Finamore and Finecamp demand a jury trial on all claims.

## THE PARTIES

1. The plaintiff, Michael Finamore ("Finamore"), is an individual who resides at 106 Douglas Rd., Webster, MA. Finamore is the president and sole shareholder of Finecamp K O A, Inc.

2. The plaintiff, Finecamp KOA, Inc. ("Finecamp"), is a Massachusetts corporation with its principal office at Douglas Rd., Webster, MA. Finamore and Finecamp operate the Webster Family Campground located on Douglas Rd. in Webster, MA.

3. The defendant, Jason Piader, is a member of the Webster Zoning Board of Appeals who resides at 91 Bates Point Road, Webster, MA.

4. The defendant, Daniel Cournoyer is a member of the Webster Zoning Board of Appeals who resides at 6 Brook Street, Webster, MA.

2

5. The defendant, Mark Mason, is a member of the Webster Zoning Board of Appeals who resides at 33 Rawson Road, Webster, MA.

6. The defendant, Christopher Daggett, is a member of the Webster Zoning Board of Appeals who resides at 93 Birch Island Road, Webster, MA.

7. The defendant Daniel Fales is a member of the Webster Zoning Board of Appeals who resides at 33 Bayview Road, Webster, MA.

8. The defendant, Randall Becker ("Becker"), is an individual residing at 77 Bates Point Road, Webster, MA. Becker is the Chairman of the Webster Board of Selectmen.

9. The defendant, Jennifer Sullivan ("Sullivan"), is an individual residing at 5 Sunrise Shore East, Dudley, MA. Sullivan is the Town of Webster Health Director.

10. The defendant, Douglas Willardson ("Willardson"), is an individual residing at 4 Spanish River Road, Grafton, MA. Willardson is the Webster Town Administrator.

11. The defendant, Theodore Tetreault ("Tetreault"), is an individual residing at 902 Gulfwood Road., Southbridge, MA. Tetreault is the Webster Building Commissioner.

12. The defendant, Michael Shaw ("Shaw"), is the Webster Police Chief with his office at 357 Main Street, Webster, MA.

## FACTS

### *The Webster Family Campground.*

13. In 1974, Finamore incorporated Finecamp which purchased the Webster Family Campground located 106 Douglas Road in Webster.

14. The campground operates pursuant to a license from the Webster Board of Health under Chapter 140, sections 32A-32E of the general laws.

15. The campground contains 104 camp sites of which 35 have connections to public sewer.

3

16. Since its opening and continuously to this day, Webster Family Campground has hosted permanent, year round trailer camping, as well as short and longer term recreational camping.

17. Until 1971, the Webster Trailer By-Law (approved April 6, 1966) permitted the occupancy and use of trailers as residences, without any prohibition against the use of a trailer as a permanent residence.

18. On March 22, 1971, the town amended its zoning by-law to provide:

**§ 650-40 Trailers and mobile homes.**

No trailer or mobile home used as a permanent habitation, office, camp or like purpose, whether on wheels, jacks or foundation and unregistered for travel, shall be allowed.

19. Webster Family Campground has been used lawfully and continuously for permanent habitation in trailers and mobile homes before first notice of publication of the public hearing for section 650-40 of the Webster zoning by-law, without any change or extension of the use.

*Hostility of Webster Officials to Finamore and the*

*Webster Family Campground.*

20. The defendants Becker, Sullivan, Willardson, Tetreault and Shaw, each and collectively, have ill-will against Finamore, personally, and the Webster Family Campground.

21. Finamore is active politically in Webster and serves on its finance committee.

22. In his capacities as a resident of Webster and as a town official, Finamore has criticized the individual defendants with respect to their respective performance of their official duties.

23. Finamore has criticized defendant Becker's honesty as a selectman in an online town forum which public criticism has engendered statements of personal hostility by Becker against Finamore.

24. Finamore has engaged in disputes with Sullivan as to her competency and qualification to serve as the town's health director which has engendered Sullivan's hostility to the point where

4

the health department refuses to respond to inquiries from Finamore as a resident of Webster, and instead, refers Finamore's valid inquiries to an outside law firm retained by the town.

25. Defendant Tetreault has expressed publicly his disdain for the Webster Family Campground.

26. Finamore has complained to the Webster Police Department about the department's lack of responsiveness to calls from the Webster family Campground.

27. Each of the individual defendants has used his or her official authority to interfere with Finamore's rights protected under law and the state and U.S. Constitutions, through threats, intimidation and coercion, in order to force the closure of the Webster Family Campground.

*The Concerted Action to Force the Closure of the Campground.*

28. Defendant Becker is the chairman of the Board of Selectmen.

29. The Board of Selectmen is the appointing authority for the town administrator in Webster and controls the compensation paid to the town administrator.

30. With respect to the appointment of defendant Willardson as town administrator, Becker was initially opposed to his appointment.

31. However at the final vote of the selectman, Becker cast the deciding vote in favor of the appointment of Willardson as the town administrator.

32. As aforesaid, Becker has personal malice and ill will toward Finamore.

33. At some point in 2019, Becker or Willardson engaged special town counsel in order to advise the defendant town officials as to an apparently legal scheme to force the closure of the Webster Family Campground.

34. Special town counsel was engaged in order to cloak the scheme with the appearance of lawful government practice and to attempt to keep secretive conspiratorial conversations between the individual defendant town officials.

5

35. The initiation of the scheme was a notice sent by Willardson on one or more occasions to Finamore that the Webster family Campground would be inspected to ensure the Campground's compliance with the State sanitary code requirements for family typed campgrounds.

36. The notice's from Willardson to Finamore stated that the letter of was a "courtesy" in notifying Finamore of the "required yearly inspection" scheduled for a date chosen by Willardson.

37. The notice stated that the inspection will be conducted by "our code enforcement team."

38. The notice stated that "[w]e will be doing similar inspections for all 'family-type campgrounds' in the Town."

39. The town officials did not have the legal authority to send a "code enforcement team" to inspect the Webster Family Campground.

40. Finamore and the Webster Family Campground had not been subjected previously to regular yearly inspections.

41. Other family-type campgrounds in Webster were not provided with a notice of inspection nor inspected by the "code enforcement team."

42. Finamore and the Webster family campground were subjected to the unlawful inspections by the "code enforcement team" as part of the scheme to force the closure of the Campground.

*The July 15, 2019 Inspection.*

43. On July 15, 2019, the Webster Family Campground was set upon by the so-called "code enforcement team" which included Police Chief Shaw, the Webster Fire Chief, building commissioner Tetreault, the Webster wiring inspector, health director Sullivan, special town counsel Brian Winner and a representative of the Commonwealth of Massachusetts Department of Public Health.

6

44. The only members of the "code enforcement team" entitled to make entry on the Webster Family Campground for purposes of inspection under the state sanitary code were Sullivan and the representative of the Massachusetts Department of Public health.

45. The other members of the "code enforcement team" who made entry on the Webster family Campground on July 15, 2019 did so without right and with improper motives for their entry.

46. By accompanying the other members of the "code enforcement team" in the improper inspection Sullivan engaged in unlawful concerted action with Tetreault, Shaw and Winner.

47. Willardson and Becker organized encouraged aided and abetted the unlawful inspection of the Webster Family Campground by the "code enforcement team."

*The Inspection Results.*

48. By letter dated July 19, 2019, Tetreault informed Finamore of the results of his July 15, 2019 inspection although the letter was dated July 19, 2019 He was not delivered to Finamore on ( by constable) until July 26, 2019.

49. The July 19, 2019 letter from Tetreault stated, among other things, that:

a) There are multiple vehicles and trailers that are unregistered throughout the facility which is a violation of the **Town of Webster Zoning By Law 650-26;**
b) Raw sewage was observed on the ground at multiple separate sites from the campers draining their septic on site causing a severe health and sanitary condition and also violates the **Town of Webster Zoning Bylaw 650 -36; and**
c) It was noted that some trailers and inhabitants are residing at the campground year round which is not allowed and is in violation of the **Town of Webster Zoning Bylaw 650-40** and a violation of the **IBC (International building code).**
50. Tetreault's July 19, 2019 letter ordered Finamore "to abate all zoning violations" including:

**3. You must also inform the year round inhabitants that they are not allowed to occupy year round and must find other living arrangements. An inspection for compliance will be conducted on or around 30 days from the date of this order. Failure to comply results in maximum fines and penalties according to regulations. Additionally, any trailer found**

7

**occupied after the fall season will be deemed unsafe and dangerous for habitation in an order to vacate will be issued.**

51. Tetreault's order was beyond his authority as building commissioner and intended to force Finamore to close the Webster family campground either through the eviction of his year-round residents or through the payment of maximum fines and penalties which could amount to as much as $300 per day.

52. Tetreault's order was part of a concerted action with defendants Becker, Willardson, Shaw and Sullivan with the advice of special town counsel, to force Finamore to close the Webster Family Campground.

53. The individual defendants acted with improper and unlawful means, improper motives and personal ill will and malice toward Finamore to harm Finamore in his business, the Webster Family Campground.

54. Tetreault's statement that there was raw sewage on the ground at the Webster family campground was false, malicious and intended to harm Finamore and his business.

55. On July 26, 2019, Finamore was served also with a letter dated July 19, 2019 from Health Director Sullivan.

56. Sullivan's letter, containing her inspection results, also falsely stated that there was "Raw sewerage emptying on the ground and not properly connected/nor have a place to connect to throughout multiple sites."

57. Sullivan's letter declared the Webster Family Campground to be unfit for human habitation and ordered Finamore to correct the "raw sewerage" violation within 24 hours, or the Board of Health would force the removal of the occupants from the Webster Family Campground, "close up the premises" and seek the appointment of a receiver of the campground.

58. Sullivan's false statement that there was raw sewage on the ground that the campground and threat to close the campground and remove its occupants, was part of the concerted unlawful effort of the individual defendants to force the Webster Family Campground out of business.

### Count 1- CH. 40A SECTION 17
### (v. Members of the Webster Zoning Board of Appeals.)

59. The plaintiffs re-allege allegations 1-58 of the complaint.

60. The plaintiffs timely appealed the order of Building Commissioner Tetreault to the defendant Webster Zoning Board of Appeals.

61. On September 11, 2019 the defendant members of the zoning Board of appeals held a hearing on the plaintiffs' appeal of the building inspector's order.

62. At the hearing there was no evidence presented by the building commissioner that there was raw sewage present on the ground at the Webster Family Campground for his inspection.

63. The only evidence presented at the hearing was that there was no raw sewage on the ground but that perhaps there was less than a pint of water dripping from a trailer at the campground.

64. There was no evidence presented at the hearing that any of the trailers located on the property were unfit for their use either for occupation or on the roadway.

65. There was no evidence presented at the hearing that the Webster family campground was not used as permanent residences for occupants of the Webster Family Campground prior to 1971, when Webster's prohibition on the use of trailers as permanent residences was enacted.

66. The only evidence at the hearing was that the Webster Campbell family campground has been used continuously as permanent residences since 1970.

67. On September 23, 2019 the members of the zoning Board of appeals issued their Decision on Finamore's appeal and filed the Decision with the town clerk. A true copy of the Decision is attached hereto as Exhibit A.

68. In its Decision, the Zoning Board of Appeals:

1. upheld the Building Commissioner's order to abate and correct the zoning violation of section 650-26 for unregistered, inoperable motor vehicles;

2. upheld the Building Commissioner's order to abate and correct zoning violation 650-36, offensive uses for raw sewage on the ground at the campground; and

3. upheld the Building Commissioner's order to abate and correct zoning violation section 650-40, inhabitants residing at the campground year-round.


69. Based upon all of the evidence at the hearing, the Decision of the board of appeals exceeds its authority, and based on the evidence, is arbitrary and capricious.

70. The plaintiffs are persons aggrieved by the decision of the board of appeals.

**WHEREFORE,** the plaintiffs pray that the decision of the Webster zoning Board of Appeals, attached hereto as Exhibit A, be annulled and that the plaintiffs be awarded their costs.

## COUNT 2 – CIVIL CONSPIRACY
### (v. Becker, Shaw, Tetreault, Sullivan and Willardson)

71. The plaintiffs re-allege the allegations contained in paragraphs 1 through 70 of the complaint.

72. The above-named individual defendants, acting in concert, by agreement, scheme and/or artifice, intentionally, maliciously and recklessly conspired to injure Finamore and Finecamp by interfering with their contractual relationships with campground customers and future contractual relationships with campground customers.

73. The above-named individual defendants, acting in concert, exercised economic coercion over the plaintiffs to force the closure of the Webster Family Campground.

74. As a result of this civil conspiracy, the plaintiffs have been damaged.

**WHEREFORE,** the plaintiffs pray that they be awarded their damages plus interest and costs.

10

## COUNT 3-48 USC SS. 1983,1985
### (v. Becker, Shaw, Tetreault, Sullivan and Willardson)

75. The plaintiffs re-allege paragraphs 1 through 74 of the complaint.

76. The conduct of the individual defendants, individually and in the formation of a conspiracy with each other, under color of state law, deprived the plaintiffs of their rights to contract, private property and Equal Protection of the Laws under the United States Constitution.

77. The individual defendant town officials intentionally and wrongfully singled out Finamore and Finecamp for unfavorable treatment as a campground without any rational basis for the difference in treatment.

78. The individual defendant town officials were motivated by a malicious intent to injure the plaintiffs.

79. The defendants knew, or reasonably should have known, that their conduct violated the United States Constitution and the law.

**WHEREFORE,** the plaintiffs pray that this Court award them compensatory damages, punitive damages plus reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983, 1985 & 1988.

## COUNT 4 – VIOLATION OF MASS CIVIL RIGHTS ACT
### M.G.L. C. 12, §§ 11H & 11I
### (v. Becker, Shaw, Tetreault, Sullivan and Willardson)

80. The plaintiffs re-allege paragraphs 1 through 79 of the complaint as stated herein.

81. The conduct of individual defendant town officials, individually and in conspiracy with each other, including issuing illegal entry, illegal orders, threats of fines, and exercising economic coercion against the plaintiffs and their customers constitutes intentional interference with the enjoyment by the plaintiffs of their rights secured by the

Constitution and laws of the Commonwealth of Massachusetts including their property rights and due process rights in connection with the use of the Webster Family Campground.

82.     The defendants attempted to interfere with these rights and did interfere with these rights through threats, intimidation or coercion.

WHEREFORE, the plaintiffs pray that they be awarded their damages plus statutory interest, reasonable attorney's fees and costs.

## COUNT 4 – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (v. Becker, Shaw, Tetreault, Sullivan and Willardson)

83.     The plaintiffs re-allege paragraphs 1 through 82 of the complaint as stated herein.

84.     The plaintiffs have advantageous contractual relationships with their customers.

85.     The defendant town officials were aware of the advantageous relationship.

86.     The defendant town officials, using improper means and motives, maliciously interfered with the plaintiffs' relationships with their customers which has causes lost revenue to the plaintiffs.

WHEREFORE, plaintiffs pray that they be awarded damages plus statutory interest, and costs.

## COUNT 5 – DECLARATORY JUDGMENT
### (v. Tetreault)

87.     The plaintiffs re-allege paragraphs 1 through 86 of the complaint as stated herein.

88.     A controversy exists between the plaintiffs on the one hand, and Building Commissioner Tetreault, on the other hand, as to whether the building commissioner can enforce the prohibition against year-round occupancy in trailers in zoning by-law section 650-40 against the plaintiffs.

12

89. Plaintiffs claim that year-round occupancy in trailers has existed continuously at the Webster Family Campground since 1970, and that, therefore, section 650-40 cannot be enforced against the Webster Family Campground under MGL c. 40A, § 6.

90. Plaintiffs have an interest in this legal controversy.

WHEREFORE, plaintiffs demand:

(a) A preliminary injunction forbidding enforcement of section 650-40 of the Webster Zoning By-law against the Webster Family Campground;

(b) permanently enjoining enforcement of section 650-40 of the Webster Zoning By-law against the Webster Family Campground;

(c) declaring that section 650-40 of the Webster Zoning By-law is unenforceable against Webster Family Campground; and

(d) such other relief as is just.

## COUNT 6 – DEFAMATION
### (v. Tetreault and Sullivan)

91. The plaintiffs re-allege paragraphs 1 through 90 of the complaint.

92. The defendants, Tetreault and Sullivan, have by spoken words, published defamatory statements that there is raw sewage on the ground at Webster Family Campground.

93. The defendants' defamatory statements were not privileged.

94. The defendants made the statements with knowledge of falsity or without determining whether the statements were true, false or defamatory before publishing them.

95. The defendants' statements were false and made with malice.

96. The defamatory statements were libelous per se.

13

97.    The defamatory statements of the defendants prejudiced Finamore in his profession and imputed unfitness to operate a campground.

98.    As a result of the defendants' actions, Finamore has been damaged.

**WHEREFORE** the plaintiff demands that he be awarded his damages, plus interest and costs.


## THE PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS SO TRIABLE


                                         Respectfully Submitted,

                                         PLAINTIFFS
                                         MICHAEL FINAMORE
                                         FINECAMP K O A, INC.
                                         BY THEIR ATTORNEY,


Dated: October 10, 2019

                                         _____
                                         Bart Heemskerk
                                         83 East Alvord Street
                                         Springfield, MA 01108
                                         Tel: (413) 896-4598
                                         Fax: (413) 417-2235
                                         bart@heemskerklawyer.com
                                         BBO #: 548058



## WEBSTER ZONING BOARD OF APPEALS

### DECISION

### APPEAL THE ORDER TO ABATE AND CORRECT THREE ZONING VIOLATIONS ISSUED BY THE BUILDING COMMISSIONER

### Michael Finamore d/b/a Webster Family Campground (Applicant / Owner) 106 Douglas Road, Webster MA

| | |
|---|---|
| PETITIONER: | Michael Finamore d/b/a Webster Family Campground |
| RELIEF SOUGHT: | Administrative Appeal of Zoning Order |
| LOCATION: | 106 Douglas Road |
| PARCEL ID: | 70-A-7-0 |
| OWNER OF SUBJECT: | Michael Finamore d/b/a Webster Family Campground |
| DATE OF HEARING: | September 11, 2019 |

## I.   BACKGROUND

The Application for an Appeal was formally submitted to the Town Clerk on August 14, 2019. The public hearing was scheduled for and held September 11, 2019. The public hearing notice was posted with the Town Clerk on August 14, 2019. Notice of the public hearing and the subject matter thereof was published in the Worcester Telegram & Gazette on August 28 and September 4, 2019. The public hearing was held in the Community Meeting Room of the Webster Police Department, 357 Main Street, Webster, MA. Abutters were notified by Certified First Class Return Receipt mail. Surrounding towns were notified by First Class Mail.

The public hearing on the Application was opened on September 11, 2019. The following Board members were present during the public hearing: Chairman Jason Piader, Vice Chairman Daniel Cournoyer, and Members Chris Daggett, Daniel Fales and Mark Mason. Attorney Bart Heemskerk and Michael Finamore presented the appeal application to the Board. Also present was Theodore Tetreault, Building Commissioner, Special Town Counsel Attorney Brian Winner, and Ann Morgan, Director of Planning & Economic Development and staff to the Board. At the public hearing, all those wishing to speak to the petition were heard. The public hearing was closed on September 11, 2019.

## II.   EXHIBITS / SUBMITTALS

EXHIBIT 1.   Correspondence from Michael Finamore, Appeal to Webster Board of Appeals, the Order to Abate and Correct; dated July 31, 2019; 1 page.

EXHIBIT 2.   Correspondence from the Town of Webster to Michael Finamore; Appeal; dated August 1, 2019; sent via Certified, Return Receipt, First Class Mail; 1 page.

EXHIBIT 3.   Appeal Application materials submitted by the Owner received August 14, 2019; including the following:

- Appeal Application; 2 pages.

Case 4:19-cv-40146-TSH    Document 1-1    Filed 11/08/19    Page 16 of 19

*Webster Zoning Board of Appeals*
*Appeal Decision – 106 Douglas Road*
*Michael Finamore d/b/a Webster Family Campground (Applicant / Owner)*
*Page 2*

- Certified Abutters List and associated materials; certified by the Webster Assessor on August 14, 2019; 4 pages.

- Email, Attorney Bart Heemskerk to Michael Finamore re: Appeal; dated August 13, 2019; 1 page.

- Correspondence from Theodore Tetreault, Inspector of Buildings, Town of Webster; re: Inspection Results for Webster Family Campground; dated July 19, 2019; 3 pages.

EXHIBIT 4.    Webster Zoning Board of Appeals Public Hearing Notice; stamped by the Town Clerk on August 14, 2019; 1 page.

EXHIBIT 5.    Site Photos submitted by the Board of Health Director; taken July 15, 2019; 8½ x 11", color; 44 pages.

EXHIBIT 6.    Zoning Board of Appeals Meeting Sign-In Sheet for September 11, 2019; 2 pages.

## III.    FINDINGS

F1.    The property which is the subject of this appeal is known and numbered as 106 Douglas Road (the "Property").

F2.    The Property is the location the Webster Family Campground.

F3.    The Webster Family Campground consists of, among other things, so-called trailers or campers on various campsites on the Property.

F4.    The Building Commissioner's July 19, 2019 order identifies three violations of the Zoning Bylaw; Sections 650-26, 650-36 and 650-40.

F5.    As recited in the Building Commissioner's July 19, 2019 order,

Section 650-26 states:

No unregistered motor vehicle which is unfit for use, permanently disabled or has been dismantled shall be stored, parked or placed upon any land in the Town of Webster for more than 30 days unless such vehicle is kept within a building or in other screened or located so that it cannot be seen from a public highway or abutting property. Said bylaw shall not apply to premises operated under Class III Junk License.

Section 650-36 states:

No use or occupancy of buildings, structures or premises shall be hereafter permitted which is liable, when conducted under proper conditions and safeguards, to be currently and frequently noxious or offensive by reason of the emission of dust, odor, fumes, smoke, gas, wastes, refuse matter, noise or excessive vibrations so as to be detrimental to public health, safety, comfort or general welfare.

650-40. states:

No trailer or mobile home used as a permanent habitation, office, camp or like purpose, whether on wheels, jacks or foundation and unregistered for travel, shall be allowed.

F6.    The Building Commissioner testified as to each of the above violations as observed during his July 15, 2019 inspection of the Property and based upon his personal knowledge of the Property in his capacity as the Town's Building Commissioner and Zoning Enforcement Officer.

F7.    In sum, the Building Commissioner explained what was depicted in the specimen photographs accompanying his order and testified that there are multiple vehicles and trailers that are unregistered throughout the facility. He also testified that he observed gray water on the grounds at multiple camp site and uncapped pipes dripping and/or discharging gray water from a number of trailers. He also testified that the occupants of many of these trailers occupied them year-round and had done so for several years.

F8.    The Town's Health Director as well as the Chief of Police, both of whom accompanied the Building Commissioner on the July 15, 2019 inspection, supported the Building Commissioner's testimony.

F9.    The petitioner, though its counsel, challenges each one of the violations cited by the Building Commissioner.

F10.    As to Section 650-26, the petitioner, in sum, argues that no violation exists because the trailer/campers are not "motor vehicles," are not "unfit for use" and, therefore that registration is not required. The petitioner also argued that virtually all of these trailer/campers cannot be seen from a public way or abutting property.

F11.    As to Section 650-36, the petitioner, in sum, argues that no violation exists because there is no evidence of raw sewage as citing in the Building Commissioner's order and because, in any event, there is no offensive use when the campground is conducted under proper conditions and safeguards. The petitioner argued that an occasional spill does not constitute an ongoing nuisance.

F12.    As to Section 650-40, the petitioner does not dispute that some campers/trailers are occupied year-round. Rather, the petitioner states that that year-round use is protected as a grandfathered use. In support of its grandfathering claim, only Mr. Finamore testified and he provided no documentation of any kind for the Board's review and consideration. While he testified that the trailers have been on the site and occupied for year-round use since 1969 since before he bought the Property in 1974. He also testified that that year-round use has been uninterrupted since 1969.

F13.    Although few comments from the public were offered during hearing, abutters to the Property testified that trailers/campers were visible from the public way and adjacent properties. There was no testimony from the public as to the other alleged violations and there were no written comment from the public received in this matter.

F14.    Some testimony and argument was offered concerning State Building Code and related code matters, however, the Board has no jurisdiction concerning such matters and so disregards this evidence.

F15.    Based upon the testimony and evidence before the Board, the Board believes that the weight of credible evidence demonstrates that numerous camper/trailers are both unregistered and in substantial disrepair. The Board also finds the petitioner's argument that campers/trailers are not motor vehicles. The Board finds that a more reasonable interpretation of the term motor vehicle in the context of Section 650-26 is one that includes structures used or designed to be moved, towed, or drawn on a road. Accordingly, the campers/trailers at issue are motor vehicles within the meaning of Section 650-26. This interpretation is more consistent with the intent and purpose of the bylaw to prevent the storage of broken-down vehicles and vehicle parts from causing a nuisance to the community. With respect to the requirement that such vehicles be unfit, the Board believes that fitness, in this context, means fitness for the purpose for which it was designed. In this case, these dilapidated camper/trailers no longer are

Case 4:19-cv-40146-TSH    Document 1-1    Filed 11/08/19    Page 18 of 19

*Webster Zoning Board of Appeals*
*Appeal Decision – 106 Douglas Road*
*Michael Finamore d/b/a Webster Family Campground (Applicant / Owner)*
*Page 4*

roadworthy and no longer are fit to be occupied as trailer/campers. It is immaterial that residents actually occupy these campers/trailers. The credible evidence is that they are neither fit to be moved nor fit to be occupied.

F16. Based upon the testimony and evidence before the Board, the Board believes that the weight of credible evidence demonstrates that numerous camper/trailers are visible from the public way and/or from abutting properties.

F17. Based upon the testimony and evidence before the Board, the Board believes that the weight of credible evidence demonstrates that, whether gray water or raw sewage, the discharge of such material from camper/trailers is sufficient to constitute waste and/or refuse matter as well as to cause odor and/or fumes.

F18. Based upon the testimony and evidence before the Board, the Board finds that it is undisputed that numerous camper/trailers are occupied year-round. The Board also believes that the petitioner failed demonstrate through persuasive testimony and/or documentary evidence that the year-round use is grandfathered or that, even if so, that use has been uninterrupted since before the bylaw was adopted, or that the use has not expanded improperly, or that the since allegedly used year-round are even the same location or number of the sites currently used year-round. In light of the burden on the petitioner to demonstrate his use is indeed protected, the Board has virtually no credible evidence before it on which to rely and virtually no credible evidence sufficient to justify an affirmative finding of fact that the current year-round use is grandfathered.

F19. In sum, the Board found that with a fair view to the testimony of the Building Commissioner and other Town officials as well as the testimony and argument offered by the petitioner, the petitioner has failed to provide sufficient evidence to carry its burden to show that the Building Commissioner's order was improper, unsupported by the facts or beyond this authority. To the contrary, the weight of the credible evidence demonstrates that the Building Commissioner's order is justified. Lastly, the petitioner's argument, in part, rests upon interpretations of the bylaw and less so on a dispute as to the facts. Accordingly, and as set forth below, the Board finds that the Building Commissioner's findings, interpretation and application of the relevant bylaw provisions in this particular case were appropriate and justified.

## IV.    DECISION

After the close of the public hearing on September 11, 2019, the Board reviewed and made a decision on each of the individual cited violations as follows:

D1. Zoning Violation cited by the Building Commissioner: Multiple vehicles and trailers that are unregistered throughout the facility in violation of the Town of Webster Zoning By-Law, Section 650-26: Unregistered, inoperable vehicles. (See EXHIBIT #1)

Motion to uphold the Building Commissioner's Order to Abate and Correct for zoning violation 650-26 as cited in the letter dated July 19, 2019 (see EXHIBIT #1).

Discussion: See FINDINGS #F15 and #F16.

Roll Call Vote: Fales – AYE; Daggett – AYE; Cournoyer – AYE; Piader – AYE; Mason – AYE

D2.    Zoning Violation cited by the Building Commissioner: Raw sewage was observed on the ground at multiple separate sites from the campers draining their septic on site causing a severe health and sanitary condition in violation of the Town of Webster Zoning By-Law, Section 650-36: Offensive uses. (See EXHIBIT #1)

Motion to uphold the Building Commissioner's Order to Abate and Correct for zoning violation 650-36 as cited in the letter dated July 19, 2019 (see EXHIBIT #1).

Discussion: See FINDINGS #F17.

Roll Call Vote: Fales - AYE; Daggett - AYE; Cournoyer - AYE; Piader - AYE; Mason - AYE

D3.    Zoning Violation cited by the Building Commissioner: some trailers and inhabitants are residing at the campground year round which is not allowed and is a violation of the Town of Webster Zoning By-Law, Section 650-40: Trailers and mobile homes and a violation of the IBC (International Building Code), Appendix G under Recreational Vehicle. (See EXHIBIT #1)

Motion to uphold the Building Commissioner's Order to Abate and Correct for zoning violation 650-40 as cited in the letter dated July 19, 2019 (see EXHIBIT #1).

Discussion: See FINDINGS #F18.

Roll Call Vote: Fales - AYE; Daggett - AYE; Cournoyer - AYE; Piader - AYE; Mason - AYE

**BY ORDER OF THE BOARD**

_____                    9-23-2019
Jason Piader, Chairman                                    Date


Received by the Town Clerk on:        Sept 23, 2019                    4:30 pm
                                        Date                            Time


_____
Robert T. Craver, Town Clerk