UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MICHAEL FINAMORE and FINECAMP KOA, INC., d/b/a Webster Family Campground, <br><br> Plaintiffs, <br><br> v. <br><br> JASON PIADER, DANIEL COURNOYER, MARK MASON, CHRISTOPHER DAGGETT, and DANIEL FALES, as they are the members of the Town of Webster, Massachusetts Zoning Board of Appeals, and <br><br> RANDALL BECKER, JENNIFER SULLIVAN, DOUGLAS WILLARDSON, THEODORE TETREAULT and MICHAEL SHAW, individually and in their official capacities as officials of the Town of Webster, Massachusetts, <br><br> Defendants. | CIVIL ACTION <br> NO. 4:19-40146-TSH |

## ORDER AND MEMORANDUM ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 53)

**August 3, 2022**

**HILLMAN, D.J.**

Michael Finamore and Finecamp KOA, Inc. ("Plaintiffs") own and operate the Webster Family Campground (the "Campground") in the Town of Webster (the "Town"). In 2019, the Town inspected the Campground, found several zoning violations, and ordered Plaintiffs to remedy the violations. Plaintiffs appealed the order to the Town's Zoning Board of Appeals (the

"ZBA"), which affirmed.  In this action, Plaintiffs seek review of the ZBA's decision.  Plaintiffs also assert a myriad of statutory and common law claims against various Town officials.  Defendants move for summary judgment.  (Docket No. 53).  For the following reasons, the Court ***grants*** the motion.

## Background

Plaintiffs, who own and operate the Campground, permit campers to use between eight and twenty-five of the Campground's approximately one hundred campsites year-round.  During winter months, the campsites do not have a direct supply of water.  In 2011, the Massachusetts Department of Public Health ("DPH") determined that occupancy of year-round campsites at the Campground without water supply during winter months violated the State Sanitary Code, 105 Code Mass. Regs. § 440.

In 2017, a DPH representative, along with the Town Building Commissioner, the Town Health Director, and the Town Police Chief, inspected the Campground.  At the time, Plaintiffs had an "open-door policy," permitting Town officials to "come on the campground any time they wanted."  After the inspection, the Health Director informed Plaintiffs of several health violations and ordered Plaintiffs to remedy the violations.  In letters to the Town Administrator, Plaintiffs complained of unequal treatment.

In July 2019, a DPH representative, the Town Building Commissioner, the Town Health Director, and the Town Police Chief again inspected the Campground.  Based on Plaintiffs' previous complaints of unequal treatment, the group also inspected Indian Ranch, another campground in the Town.  After the inspection, the Building Commissioner notified Plaintiffs of several zoning violations, and the Health Director notified Plaintiffs of several health violations.

The Building Commissioner found that Plaintiffs were in violation of, *inter alia*, § 650-40 of the Town's zoning by-laws, which states, "No trailer or mobile home used as a permanent habitation, office, camp or like purpose, whether on wheels, jacks or foundation and unregistered for travel, shall be allowed."  Noting that some campers were residing at the Campground year-round, the Building Commissioner ordered Plaintiffs to abate the zoning violation and inform the year-round campers that they must find other living arrangements.  Plaintiffs appealed the Building Commissioner's order to the ZBA.

Before the ZBA, Plaintiffs argued that the year-round use of campsites at the Campground was a "grandfathered" use because it predated the enactment of § 650-40 in 1971.  Plaintiffs represented to the ZBA that, when they purchased the Campground in 1974, three or four campsites were occupied year-round.  Plaintiffs further argued that such use had been uninterrupted since 1969.  Plaintiffs provided no documentation to support their assertions.

The ZBA upheld the Building Commissioner's order, concluding that Plaintiffs "failed [to] demonstrate through persuasive testimony and/or documentary evidence that the year-round use is grandfathered or that, even if so, that use has been uninterrupted since before the bylaw was adopted, or that the use has not expanded improperly, or that the [sites] allegedly used year-round are even the same location or number of sites currently used year-round."

In October 2019, Plaintiffs sued Defendants in state court, seeking review of the ZBA's decision under M. G. L. c. 40A, § 17, and asserting a myriad of statutory and common law claims against the Building Commissioner, the Health Director, and the Police Chief -- as well as the Town Administrator and the Chair of the Town Board of Selectman.  Specifically, Plaintiffs allege that the ZBA's decision was arbitrary and capricious (Count I); that the Town officials conspired to interfere with Plaintiffs' contractual relationships (Count II); that the Town officials violated

3

Plaintiffs' civil rights under federal law (Count III); that the Town officials violated Plaintiffs' civil rights under Massachusetts law (Count IV); that the Town officials interfered with Plaintiffs' contractual relationships (Count V); that declaratory judgment should enter stating that § 650-40 is unenforceable against the Campground (Count VI); and that the Building Commissioner and Health Director defamed Plaintiffs (Count VII).[1]  In November 2019, Defendants removed the case to federal court.  In June 2022, Defendants moved for summary judgment.  (Docket No. 53).

In opposition to Defendants' motion for summary judgment, Plaintiffs submitted two affidavits relating to year-round use of the Campground.  In one affidavit, Bruce Holmes avers that his father lived at the Campground year-round from 1970 to 1981, and that, during that same period, two other individuals lived at the Campground year-round, and a third individual stayed at the Campground during the winter.  Holmes further avers that he lived at the Campground from 1971 to 1976, and that the Campground has rented campsites to ice fishermen during the winter since at least 1970.  In the other affidavit, Robert J. Miller avers that, when he was a delivery driver from 1968 to 1974, he delivered dairy products to the Campground multiple times per week, and that the Campground continued operations during the winter.

## Legal Standard

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  An issue is "genuine" when a reasonable factfinder could resolve it in favor of the nonmoving party.  *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994).  A fact is "material" when it may affect the outcome of the suit.  *Id.*  When ruling on a

---

[1] Because the Complaint lists two separate claims as "Count 4," the Court has, for ease of reference in this order, restyled the claims as Counts I through VII.

motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (citation omitted).

## Discussion

### 1. Zoning Claims

Plaintiffs allege that the ZBA's decision was arbitrary and capricious (Count I), and that a declaratory judgment should enter stating that § 650-40 is unenforceable against the Campground (Count VI). A court may not disturb a ZBA decision unless the decision is based on an "unreasonable, whimsical, capricious or arbitrary" exercise of the ZBA's judgment, as applied to the facts found by the court. *See Wendy's Old Fashioned Hamburgers of N.Y., Inc. v. Board of Appeal of Billerica*, 909 N.E.2d 1161, 1168 (Mass. 2009).

Plaintiffs take issue with two aspects of the ZBA's decision. First, Plaintiffs argue that the Building Commissioner exceeded his authority (and thus the ZBA's decision to affirm was erroneous) by ordering Plaintiffs to inform campers that campers cannot reside at the Campground year-round. Plaintiffs seem to argue that, if anyone is in violation of § 650-40, it is the campers, not them. As the owners and operators of the Campground, however, Plaintiffs are responsible for complying with the Town's zoning by-laws. *See Town of Lexington v. Bean*, 172 N.E. 867, 871 (Mass. 1930) (landlords and tenants alike may be enjoined from zoning violations). Therefore, it was within the Building Commissioner's authority to order Plaintiffs to remedy the violation.

Second, Plaintiffs argue that the ZBA erred by not finding that year-round use of the Campground qualified as an existing nonconforming use. To be sure, a zoning ordinance does not apply to uses of property lawfully in existence before the ordinance was first noticed to the public. *See* M. G. L. c. 40A, § 6. Whether an existing nonconforming use is protected, however, "depends

upon whether the use reflects the nature and purpose of the use prevailing when the zoning by-law took effect . . . whether there is a difference in quality or character, as well as the degree, of use . . . and whether the current use is different in kind." *Hall v. Zoning Bd. of Appeals of Edgartown*, 549 N.E.2d 433, 439 (Mass. App. Ct. 1990) (cleaned up). "The property owner bears the burden of proving the requisite similarity between the current use and the original nonconforming use." *Cape Resort Hotels, Inc. v. Alcoholic Licensing Bd. of Falmouth*, 431 N.E.2d 213, 217 (Mass. 1982).

In concluding that year-round use was not "grandfathered," the ZBA reasoned that Plaintiffs had failed to demonstrate that such use had been uninterrupted since before § 650-40 was adopted, and that such use had not expanded improperly. The Holmes and Miller affidavits, which the Court may consider even though they were not before the ZBA, *see Wendy's*, 909 N.E.2d at 1167 n.20, lend credence to Plaintiffs' assertion that the Campground was used year-round since before 1971, when § 650-40 was adopted. Drawing all inferences in Plaintiffs' favor, the Holmes affidavit suggests that at least three individuals lived year-round at the Campground from 1970 to 1981. Nonetheless, the continuity of use is not the only factor determining whether a use should be protected. The quality, character, degree, and kind of use also are to be considered. *See Hall*, 549 N.E.2d at 439. The record before the Court suggests that year-round use of the Campground expanded from three or four campsites before enactment of § 650-40 to between eight and twenty-five campsites today. While, as Plaintiffs argue, an increase in quantity is not itself determinative, *see Building Inspector of Seekonk v. Amaral*, 401 N.E.2d 158, 159 (Mass. App. Ct. 1980), Plaintiffs have done nothing to establish, as is their burden, that the use of eight to twenty-five year-round campsites today is of similar quality and character as the use of three or four year-round campsites in 1970. Accordingly, on the record before the Court, a ZBA rationally could

conclude that year-round use of the Campground is not a protected nonconforming use.  Thus, the ZBA's decision must stand, and the Court <u>grants</u> summary judgment on Count I.

The Court likewise <u>grants</u> summary judgment on Count VI.  A request for declaratory relief is not an independent cause of action.  *See Buck v. American Airlines, Inc.*, 476 F.3d 29, 33 n.3 (1st Cir. 2007); *Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 197 (D.R.I. 2016).  Plaintiffs' request that the Court declare § 650-40 unenforceable against the Campground, separate and apart from the ZBA's decision regarding § 650-40, is an attempted end-run around the ZBA's decision.

### 2. *Civil Rights Claims*

Plaintiffs allege that the Building Commissioner, the Health Director, the Police Chief, the Town Administrator, and the Chair of the Board of Selectmen violated Plaintiffs' civil rights under 42 U.S.C. §§ 1983 and 1985 (Count III) and M. G. L. c. 12, § 11I (Count IV).

Plaintiffs frame their federal civil rights claim as a "class of one" equal protection claim.  Plaintiffs complain that Indian Ranch, the other campground in the Town, was not inspected in 2017 or subjected to an enforcement action.  To prevail on a "class of one" equal protection claim, Plaintiffs must show that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  At the threshold, *see Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013), Plaintiffs must demonstrate that they were "similar in relevant respects" to Indian Ranch, *see Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007).  Plaintiffs have failed to do so.  There is no indication in the record that Indian Ranch, like the Campground, had a history of health violations.  Without more, no reasonable jury could conclude that, relative to the 2017 inspection and later enforcement action, Indian Ranch and the Campground were "similarly situated."  Accordingly, the Court <u>grants</u> summary judgment on Count III.

Plaintiffs' state civil rights claim contends that the Town officials interfered with Plaintiffs' property rights secured by federal and Massachusetts law. To establish a claim under M. G. L. c. 12, § 11I, Plaintiffs must prove that the Town officials interfered or attempted to interfere with Plaintiffs' civil rights by "threats, intimidation, or coercion." *Swanset Dev. Corp. v. City of Taunton*, 668 N.E.2d 333, 337 (Mass. 1996). Plaintiffs argue that the Town officials' "improper and defamatory notices" were designed to close the Campground in the winter. Plaintiffs appear to contend that they had a right, secured by federal or Massachusetts law, to operate the Campground in the winter. To the contrary, one of the allegedly improper "notices" was from the Health Director, stating the Campground was in violation of the State Sanitary Code because, *inter alia*, "No direct water is provided to camp sites for year round residents." Plaintiffs do not argue that the Health Director's order, which effectively ordered the Campground closed when water is not directly supplied to campsites, was erroneous. Viewing the facts in Plaintiffs' favor, no jury reasonably could conclude that the Town officials violated M. G. L. c. 12, § 11I. Thus, the Court grants summary judgment on Count IV.

### 3. Tort Claims

Plaintiffs allege that the Building Commissioner, the Health Director, the Police Chief, the Town Administrator, and the Chairman of the Board of Selectmen, individually and in conspiracy, tortiously interfered with their contractual relationships (Count II and V), and that the Building Commissioner and Health Director defamed them (Count VII).

To prevail on a claim of tortious interference, Plaintiffs must establish that the Town officials' interference was "improper in motive or means." *Hamann v. Carpenter*, 937 F.3d 86, 90 (1st Cir. 2019). Plaintiffs appear to argue that the Town officials improperly attempted to close the Campground due to personal or political hostility between the Chair of the Board of Selectmen

and Finamore. Based on the admissible evidence in the record, however, Plaintiffs' theory is mere speculation. *See Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (summary judgment appropriate where nonmoving party rests on conclusory allegations, improbable inferences, and unsupported speculation).

Plaintiffs also appear to argue that the Building Commissioner was not authorized to inspect the Campground. Under Massachusetts law, however, the Building Commissioner is charged with enforcing of the Town's zoning by-laws. *See* M. G. L. c. 40A, § 7. There is no indication in the record that, during the 2019 inspection, Plaintiffs told the Town or the Building Commissioner that the Building Commissioner was not permitted on the Campground. While Plaintiffs were notified that the purpose of the 2019 inspection was to ensure compliance with the State Sanitary Code, Plaintiffs also were notified that the Town's "code enforcement team," along with a DPH representative and Town counsel, would be present. Based on the summary judgment record, no jury reasonably could find that the Town officials' inspection and enforcement was "improper in motive or means." Accordingly, the Court <u>grants</u> summary judgment on Count V.

To prevail on a claim for civil conspiracy, Plaintiffs must demonstrate the commission of an underlying tort.[2] *See Thomas v. Harrington*, 909 F.3d 483, 490 (1st Cir. 2018). Because Plaintiffs cannot sustain the underlying claim of tortious interference, the Court <u>grants</u> summary judgment on Count II.

Finally, to prevail on a claim for defamation, Plaintiffs must establish that the allegedly defamatory statement was false. *See Yohe v. Nugent*, 321 F.3d 35, 40 (1st Cir. 2003). Plaintiffs

---

[2] Plaintiffs do not appear to assert the "very limited cause of action in Massachusetts for civil conspiracy based on the defendants' allegedly unique ability to exert a peculiar power of coercion when acting in unison." *Snyder v. Collura*, 812 F.3d 46, 52 (1st Cir. 2016) (quotations omitted).

allege that the Building Commissioner and Health Director defamed them by stating that there was "raw sewage" on the ground at the Campground. No evidence in the record suggests that this statement was false. The Building Commissioner and Health Director supported the statement with testimony at the ZBA hearing. The Building Commissioner stated that he observed 10-12 different pipes discharging liquid onto the ground at the Campground; the Health Director stated that the leaking fluids were determined to be raw sewage and "gray water" based on visual observation and smell. At their depositions in this case, moreover, both confirmed that they observed raw sewage leaking from multiple trailers at the Campground. While, as Plaintiffs point out, the observed liquid was never chemically tested, Plaintiffs have offered no evidence to otherwise doubt the observations of the Building Commissioner and Health Director. Based on the summary judgment record, therefore, no jury reasonably could find the Building Commission and Health Director liable for defamation. Accordingly, the Court <u>grants</u> summary judgment on Count VII.

## Conclusion

For the reasons stated, the Court ***grants*** Defendants' motion for summary judgment. (Docket No. 53).

**SO ORDERED**

<u>*/s/ Timothy S. Hillman*</u><br>
**TIMOTHY S. HILLMAN**<br>
**DISTRICT JUDGE**